### In re: Pedro MEDINA, Petitioner.

### No. 97–1089.

United States Court of Appeals, Eleventh Circuit.

March 24, 1997.

---

Martin J. McClain, Office of the Capital Collateral Representative, Tallahassee, Florida, for Petitioner.

Kenneth S. Nunnelley, Judy Taylor Rush, Assistant Attorney General, Daytona Beach, Florida, for Respondent.

Before DUBINA, BLACK and CARNES, Circuit Judges.

PER CURIAM:

## PROCEDURAL HISTORY

Pedro Medina was sentenced to death after a Florida jury found him guilty of auto theft and the first-degree murder of Dorothy James. In *Medina v. Singletary*, 59 F.3d 1095 (11th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 2505, 135 L.Ed.2d 195 (1996), we affirmed denial of habeas corpus relief as to Medina's convictions and death sentence. The procedural history, evidence, and facts in the case are presented more fully in our prior opinion and in the opinions of the Florida Supreme Court on direct appeal, *Medina v. State*, 466 So.2d 1046 (Fla.1985), denial of Medina's first Rule 3.850 motion, *Medina v. State*, 573 So.2d 293 (Fla.1990), and denial of Medina's state habeas corpus petition, *Medina v. Dugger*, 586 So.2d 317 (Fla.1991).

On June 10, 1996, the United States Supreme Court denied Medina's petition for a writ of certiorari seeking review of our decision denying his first federal habeas corpus petition. On October 30, 1996, the Governor of Florida signed a warrant for Medina's execution, to be carried out between December 2 and 9, 1996. The Secretary for the Department of Corrections scheduled the execution for 7:00 a.m. on Thursday, December 5, 1996.

On December 2, 1996, counsel for Medina invoked Florida Statutes § 922.07, representing that Medina might be incompetent to be executed. In accordance with Florida law, the Governor stayed the execution and appointed a commission of three psychiatrists to determine Medina's competency. On December 10, 1996, the psychiatrists issued a report unanimously concluding that "Medina understands the nature and effect of the death penalty and why it has been imposed upon him." The psychiatrists further opined that Medina was feigning psychosis in an attempt to avoid his execution. On January 6, 1997, the stay of execution was lifted. A warrant for Medina's execution issued for the period from January 27 through February 3, 1997. The Governor then scheduled Medina's execution for January 29, 1997.

Meanwhile, on December 6, 1996, counsel for Medina filed a second Rule 3.850 motion in the Circuit Court of the Ninth Judicial Circuit ("the trial court"). The motion sought vacatur of Medina's conviction and sentence or, in the alternative, an evidentiary hearing on the issues raised and a stay of execution. At the same time, counsel filed a motion requesting a determination of Medina's competency to proceed with his 3.850 motion. On January 10, 1997, Medina's counsel filed a Rule 3.811 motion for stay of execution pending judicial determination of Medina's competency to be executed.

On January 14, 1997, the trial court held a hearing on Medina's motion for a determination of his competency to proceed with the 3.850 motion. By order issued on January 15, 1997, the trial court held that prevailing law provides no "right to competence" in post-conviction proceedings. Even if such a right existed, the trial court held that the evidence introduced by the parties demonstrated that Medina was competent to proceed. The trial court subsequently denied motions for rehearing and reconsideration of Medina's competency to proceed. On January 16, 1997, the trial court denied Medina's 3.811 motion, after concluding that no reasonable grounds existed to believe that Medina was not competent to be executed.

On January 21, 1997, the trial court held a hearing on Medina's 3.850 motion pursuant

to *Huff v. State*, 622 So.2d 982 (Fla.1993). On January 23, 1997, the trial court issued an order denying Medina's 3.850 motion. The court determined that each claim advanced in the 3.850 motion was procedurally barred. After the trial court denied Medina's motions for rehearing and reconsideration, Medina appealed the decision to the Supreme Court of Florida.

By order dated January 27, 1997, the Supreme Court of Florida stayed Medina's execution pending further order. In a decision dated February 10, 1997, 620 So.2d 1241, the Florida Supreme Court then affirmed in part and reversed in part the trial court's denial of Medina's motions for post-conviction relief. The supreme court reversed only with respect to the trial court's denial of an evidentiary hearing on Medina's competency to be executed. The supreme court concluded that an evidentiary hearing was required because three of the six experts who had examined Medina determined that he was not competent. Accordingly, the Florida Supreme Court remanded for an evidentiary hearing. The United States Supreme Court denied certiorari. *Medina v. Florida*, —— U.S. ——, 117 S.Ct. 1330, —— L.Ed.2d —— (1997).

Prior to the evidentiary hearing, the trial court appointed two independent experts to assess whether Medina was competent to be executed. The court authorized counsel to submit to the experts any supporting documentation. On February 19, 1997, the experts conducted their evaluation of Medina in Florida State Prison. Two days later, the experts submitted their written reports to the court. Each expert concluded that Medina possessed the mental capacity to understand the fact of his pending execution and the reason for it.

On February 24, 1997, the trial court commenced an evidentiary hearing on Medina's competency to be executed claim that lasted three and one-half days. The trial court allowed the parties to present the testimony of thirty-five witnesses, including twenty-two who testified on behalf of Medina. In addi-

tion, the court viewed several hours of videotaped examinations of Medina and considered the voluminous documentary evidence submitted by the parties. After reviewing this evidence, including the experts' reports, the trial court ruled that Medina was competent to be executed because he understood the fact of his pending execution and the reason for it. The trial court denied Medina's motion for rehearing. A warrant for Medina's execution then issued for the period from March 25, 1997, to April 3, 1997. Medina's execution is currently scheduled for 7:01 a.m. on Tuesday, March 25, 1997.

On March 12, 1997, Medina appealed the trial court's competency determination to the Supreme Court of Florida. As a testimony to the thoroughness of the trial court's inquiry, the record on appeal required more than 4,000 pages. The supreme court held oral argument on March 17, 1997. By order issued two days later, the Florida Supreme Court affirmed the trial court's decision, 620 So.2d 1241. The United States Supreme Court denied certiorari. *Medina v. Florida*, —— U.S. ——, 117 S.Ct. 1330, —— L.Ed.2d —— (1997).

On March 17, 1997, Medina filed his third 3.850 motion in the Circuit Court of the Ninth Judicial Circuit. The motion claimed that newly discovered evidence required the trial court to vacate Medina's conviction and sentence or, in the alternative, stay the execution pending an evidentiary hearing. On March 18, 1997, the State of Florida submitted a response to Medina's third 3.850 motion. The response maintained that Medina's latest post-conviction motion constituted a gross abuse of process because it was based almost entirely upon information which either was known, or could have been known with the exercise of due diligence, prior to the filing of the first 3.850 motion. On March 21, 1997, the trial court issued an order denying Medina's third 3.850 motion. Later the same day, the Florida Supreme Court affirmed the trial court's denial.

Later on March 21, 1997, counsel for Medina filed in the United States District Court

for the Middle District of Florida a habeas corpus petition or, in the alternative, a motion pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. The Rule 60(b) motion sought relief from the February 12, 1993, district court judgment denying his 28 U.S.C. § 2254 petition. Medina also filed a motion for a stay of execution.

In an order issued on March 24, 1997, the district court denied Medina's habeas petition and Rule 60(b) motion for failure to comply with the successive habeas provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA). In particular, the district court noted that Medina had not complied with 28 U.S.C. § 2244(b)(3)(A) because he neglected to move this court for an order authorizing the district court to consider a successive petition. The district court further held that, even if the AEDPA was not applicable to this case, the habeas petition and Rule 60(b) motion would be subject to dismissal as an abuse of the writ. By an order issued contemporaneously, the district court also denied Medina's request for a Certificate of Probable Cause.

## DISCUSSION

### A. The Applicability of Section 2244(b) to Medina's Claims

28 U.S.C. § 2244(b), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), substantially curtails second or successive applications for a writ of habeas corpus attacking the judgment of a state court. While acknowledging that the pleading he filed in the district court "is undeniably a second attempt by Mr. Medina to obtain habeas relief," Petition for Writ of Habeas Corpus and Motion for Stay of Execution (hereinafter "Petition") at 4, Medina seeks to circumvent those restrictions in two ways.

### 1. The Rule 60(b) Stratagem

■ First, Medina has characterized his petition, in the alternative, as a Federal Rule of Civil Procedure 60(b) motion. The prison-

er in *Felker v. Turpin,* 101 F.3d 657 (11th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 451, 136 L.Ed.2d 346 (1996), who was identically situated in all material respects with Medina, tried the same stratagem. We held in *Felker* that the second and successive petition restrictions of amended § 2244(b) apply to Rule 60(b) motions. *Id.* at 661. We more specifically held that "the successive petition restrictions contained in the amendments to § 2244(b) apply to Rule 60(b) proceedings, even where those proceedings seek to amend a judgment that became final before the effective date of the amendments." *Id.* That holding is squarely on point in this case, we are bound to follow it, and we do. The Rule 60(b) dressing Medina has put on his habeas application makes no difference to our analysis.

### 2. The "Retroactivity" Argument

■ The second way in which Medina attempts to circumvent the restrictions of amended § 2244(b) is by arguing that the provision does not apply to his second or successive habeas application, because his first one was filed before the April 24, 1996, effective date of the AEDPA amendments. It is a question of retroactivity, he says, and the second or successive application amendments of AEDPA should not be applied "retroactively." This argument of Medina's is foreclosed by a number of our prior holdings. *See Felker,* 101 F.3d 657; *In re Mills,* 101 F.3d 1369 (11th Cir.1996); *In re Waldrop,* 105 F.3d 1337 (11th Cir.1997). Those three decisions applied the amended second habeas provisions to cases in which the first application had been filed years before the AEDPA's effective date. Therefore, those decisions are binding authority contrary to Medina's position.

Medina's argument that the restrictions of amended § 2244(b) do not apply to cases in which the first federal habeas application was filed before the AEDPA's effective date is also at odds with the Supreme Court's *Felker* decision, —— U.S. ——, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996). In *Felker* the Supreme Court upheld the constitutionality of the

AEDPA amendments restricting second or successive habeas applications, and it did so in a case in which the first habeas application had been filed before the effective date of those amendments. *See id.* at ——, 116 S.Ct. at 2336. Accordingly, that decision is at least implicit authority for the proposition that the AEDPA amendments relating to second or successive applications do apply to cases in which the first application was filed before the effective date of that statute. Moreover, accepting Medina's contention would mean that the AEDPA provisions concerning second applications would have little or no effect for a number of years, and we do not believe that Congress meant to do nothing about second applications until then. For all of these reasons, we reject Medina's retroactivity argument.

We pause here to distinguish a decision upon which Medina places great reliance: *Burris v. Parke*, 95 F.3d 465 (7th Cir.1996) (en banc). In that case, the prisoner in his first habeas application had been able to attack only his conviction. The reason is that in the same state court proceedings in which his conviction had been upheld, his death sentence had been vacated and the sentencing part of the case sent back for new proceedings relating only to sentence. Before he had been resentenced and his state court remedies exhausted as to that new sentence, the prisoner filed a first federal habeas application attacking all that he could attack at that time, *i.e.*, his conviction. While he litigated the validity of his conviction in his first habeas proceeding, the new death sentence imposed on him after remand to the state trial court was affirmed by the state supreme court. After that happened, the prisoner filed his second federal habeas application, one aimed solely at his new death sentence, the sentence for which the state remedies had not been exhausted at the time his first application was filed. *Id.* at 466–67. The State had stood by while all of the first federal habeas proceedings were conducted and never once during those proceedings had it suggested that the prisoner should not

litigate the validity of his conviction in federal habeas proceedings until his sentence, too, was ready for habeas review. *Id.* at 469–70.

It was under those unusual circumstances that the Seventh Circuit held the second and successive application amendments of AEDPA would not apply. The Court reasoned that if the prisoner in *Burris* had foreseen the changes the new act would make to second application law, he would not have filed his first application until he had exhausted his state court remedies on his reimposed death sentence so that he could attack it and his conviction in the same habeas proceeding. In other words, in *Burris* the prisoner had relied to his detriment upon the provisions in pre-AEDPA law.

By contrast, if Medina had known of the changes that AEDPA would make, he still would have filed his first application when he did, and he would not have included in it any of the claims he is attempting to raise now in a second application. We know that, because Medina tells us that in the recent pleading he filed in the district court. In that pleading, Medina represents that he filed the new claims in the second application just as soon as he could after he learned of them, and that he could not have filed them at the time of his first application. For example, as to his competency to be executed claim, he states: "Mr. Medina could not have obtained habeas review of his competency for execution in his first federal habeas petition because, among other things, the law of *Ford* binds the issue temporally to a particular set of circumstances that did not obtain in 1991." Petition at 17. Medina repeats that assertion in a pleading filed in this Court today: "Mr. Medina's claim that he is incompetent to be executed is only now properly presented in federal court because Mr. Medina has never before been in imminent danger of being executed while insane." Supplemental Emergency Application for Stay of Execution, for Certificate of Probable Cause to Appeal (hereinafter "Supp. Emerg. Application") at 7–8.[1]

---

**1.** After the district court cited *Nunez v. United*      *States*, 96 F.3d 990, 991 (7th Cir.1996), in its

We have no occasion to decide whether we would part company with the Seventh Circuit if we were faced with the detrimental reliance circumstances involved in the *Burris* case. We do, however, agree with it that the circumstances in that case were significantly different from those involved in *Felker v. Turpin,* —— U.S. ——, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996). *See Burris,* 95 F.3d at 469 (explaining that it was proper to apply the new law in *Felker* because of the different circumstances); *see also Nunez v. United States,* 96 F.3d 990, 991 (7th Cir.1996) (applying the AEDPA amendments to a second § 2255 motion even though the first one had been filed before the effective date of the amendments). The circumstances in this case, which include the absence of detrimental reliance, are materially identical to those of *Felker, Mills,* and *Waldrop,* so the AEDPA amendments to the second application rules apply here just as they did in those cases.

### 3. The Special Nature of the *Ford v. Wainwright* Claim

Medina makes one argument against the application of the amended § 2244(b) provisions that is concerned primarily with his *Ford v. Wainwright,* 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986), competency to be executed claim. He argues that there was no second or successive application bar for such a claim in pre-AEDPA law, and that his right to file a second habeas application vested at the time his first application for habeas relief was denied. It follows, according to him, that it would be impermissibly retroactive to apply the new second application rules to him. Even assuming that there was no second proceeding bar applicable to competency to be executed claims before the AED-

PA amendments, Medina's argument still does not persuade us. It proves too much.

[██]  If the right to file a second or successive application and have it judged according to the law in existence vested at the time a first application was denied, our holdings in *Felker, Mills,* and *Waldrop* would have been different; we could not have held, as we did, that the second applications in those cases were to be judged according to the second application law in effect at the time they were filed instead of the law in effect at the time the first application had been denied. Moreover, if Medina's position is correct, then the Supreme Court's *Felker* decision is a purely academic exercise. There was no point in the Court deciding whether the AEDPA amendments to second or successive applications were constitutional in that case if those amendments did not even apply to it, which is the necessary thrust of Medina's argument. We do not think that the Supreme Court's *Felker* decision is pure dicta.

Labeling an expectation interest in pre-AEDPA second application law a "vested right," as Medina does, fails to advance the analysis. It is a conclusory label, at best. Medina does not explain why his expectation interest in pre-AEDPA second application law became a vested right at the conclusion of his first federal habeas proceeding, while the expectation interests of the applicants in *Felker, Mills,* and *Waldrop* did not. Detrimental reliance might be sufficient in some circumstances to convert an expectation interest into a vested right, but in Medina's case, as in those other three cases, there was no detrimental reliance on pre-AEDPA second application law.

[██]  Another contention Medina makes in an attempt to rescue his competency to be

order denying Medina's various applications and motions, Medina did include in the pleading he filed in this Court a one-sentence conclusory statement that, "Mr. Medina has asserted that 'he relied to his detriment of [sic] the state of the law preceding the Act.'" Supp. Emerg. Application at 5 (quoting from the *Nunez* opinion). But that statement, which cites nothing Medina has ever filed, is disinguous at best. It is contradicted by Medina's 219–page pleading in the district

court, which repeatedly asserts that Medina raised his new claims as soon as he could, and it is contradicted by Medina's other statement, quoted in the text above, in the very same pleading in this Court in which he makes this statement. Nowhere else has Medina ever suggested that he would have, or even could have, brought any of his new claims in his first application if he had known that AEDPA was going to be enacted.

executed claim from the § 2244(b) restrictions is that the *Ford* decision guarantees a death row inmate access to a federal determination of that issue. It follows that § 2244(b), as amended, cannot apply to competency to be executed claims, or so the argument goes. This argument would apply to all second or successive application competency to be executed claims regardless of when the first application was filed, and there are serious problems with it. To begin with, it is not any more apparent to us that *Ford* guarantees a federal court determination of the issue it addresses than that any other decision does. Medina's real problem is with rules or provisions that bar any federal constitutional claim from litigation on the merits in federal court, whether the impediments are procedural default rules or second application provisions. Insofar as second application bars are concerned, the Supreme Court has already settled the constitutionality of the AEDPA amendments. It did so in the *Felker* case.

■ Federal court determination of an issue can come about in a number of different ways other than through a second habeas application proceeding. Assuming, as Medina contends, that the competency to be executed issue could not have been raised in his first habeas application, review nonetheless could be sought through certiorari review of the state court competency proceedings. Medina had an opportunity to and did pursue that route, albeit unsuccessfully. Moreover, a competency to be executed claim can be raised in an original habeas application to the Supreme Court, because the provisions of § 2244(b), as amended, do not restrict that Court's original habeas authority. *Felker*, ―― U.S. at ――――――, 116 S.Ct. at 2338–39. At the time of this opinion's issuance, Medina had lodged in the Supreme Court an application seeking to have his claim reviewed in that way. Thus, although the provisions of § 2244(b), as amended, operate to foreclose review of competency to be executed claims in second habeas applications, federal court consideration of such claims is not entirely foreclosed. Because a prisoner can still seek

Supreme Court review of a competency to be executed claim, and given the clear language Congress chose to use in § 2244(b), and the specificity with which it prescribed the only exceptions to the second application bar, we conclude that the restrictions in that provision apply to Medina's competency to be executed claim, as well as to his other claims.

■ Instead of filing a pleading in the district court attempting to evade the provisions of 28 U.S.C. § 2244(b), as amended, Medina should have begun by filing in this Court an application seeking a certificate permitting him to file a second application in the district court, as required by § 2244(b)(3)(A). Because Medina did not obtain such a certificate, the district court correctly dismissed his habeas application, denied his motion for a stay of execution, and denied his application for a certificate of appealability.

We turn now to consideration of the application for leave to file a second or successive habeas application, which Medina has filed in this Court. A proper decision regarding it requires that we examine each of Medina's claims against the requirements of § 2244(b), as amended. *See Felker*, 101 F.3d at 661.

### B. Analysis of the Claims Under Section 2244(b)

#### 1. Competency to be Executed

■ Medina's first claim is that he is presently incompetent to be executed and is entitled to a stay of his death sentence until such time as his competency is restored. This claim, which is explicitly based on the 1986 decision in *Ford v. Wainwright*, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986), does not rely on a new rule of constitutional law and is therefore not within the § 2244(b)(2)(A) exception to the bar against second federal habeas applications.

■ Nor is this an instance in which "the factual predicate for the claim could not have been discovered previously through the exercise of due diligence" and the facts underly-

ing the claim, if proven, would "establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense," as required by § 2244(b)(2)(B). Medina's competency to be executed claim has nothing to do with his guilt or innocence of the underlying offense. Therefore, the second exception to the second application bar is unavailable to him, because the plain terms of that exception make it clear that it is limited to claims going to whether the applicant is "guilty of the underlying offense." The § 2244(b)(2)(B) exception to the bar against second habeas applications has no application to claims that relate only to the sentence. *See Greenawalt v. Stewart*, 105 F.3d 1268, 1277 (9th Cir.) (the § 2244(b)(2)(B) exception does not apply to an ineffective assistance of counsel at sentencing), *cert. denied*, —— U.S. ——, 117 S.Ct. 794, 136 L.Ed.2d 735 (1997); *Greenawalt v. Stewart*, 105 F.3d 1287, 1288 (9th Cir.1997) (the requirements of § 2244(b)(2)(B) are not satisfied by applicant's claim that execution by lethal injection is unconstitutional, because that claim "is not relevant to the question whether he is guilty of murder in the first degree").

Medina concedes that "the Act does not appear to permit consideration of a claim under *Ford v. Wainwright*." Application for Permission to File a Second Habeas Corpus Petition at 2. We agree. Because neither § 2244(b)(2) exception is available, Medina has failed to make the prima facie showing required by § 2244(b)(3)(C), and he is not entitled to a certificate permitting him to litigate his present incompetency claim in the district court.

### 2. The *Brady* Claim

■ Medina's second claim is based upon *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), a decision which was certainly available when Medina filed his first federal habeas application. Therefore, the § 2244(b)(2)(A) exception is not applicable. Nor is the (b)(2)(B) exception applicable, even assuming that "the factual predicate for the claim could not have been discovered previously through the exercise of due diligence," as required by (b)(2)(B)(i). In denying collateral relief, the state trial court thoroughly discussed Medina's *Brady* claims. Its discussion and analysis convinces us that Medina has failed to make a prima facie showing that if the facts underlying the claim were proven and "viewed in light of the evidence as a whole," those facts would be "sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense," as required by § 2244(b)(2)(B)(ii).

In reaching this determination, we have considered not only the evidence put forward as the basis of this latest *Brady* claim, but also the evidence that Medina put forward to support the *Brady* claim he brought in his first federal habeas application in 1991, as well as the entire record in the case. *See Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995); *Felker*, 101 F.3d at 665. Because neither exception contained in § 2244(b)(2) applies, Medina is not entitled to a certificate permitting him to raise his *Brady* claim in a second habeas proceeding. Of course, to the extent that this *Brady* claim was raised in Medina's first habeas application, *see Medina v. Singletary*, 59 F.3d 1095, 1099, 1100 n. 1, 1109 (11th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 2505, 135 L.Ed.2d 195 (1996), it is barred by § 2244(b)(1).

### 3. The Sentence Innocence Claim

Medina's third and final claim is that he is innocent of the death penalty. This claim has two parts or subclaims. First, Medina contends that both of the aggravating circumstance findings upon which his death sentence was based are invalid because of jury instruction error as to each one. Next, Medina contends that he is not eligible for the death penalty because his sentence is not proportional compared to the sentences in similar cases. The § 2244(b)(2)(B) exception is unavailable for either component of this

claim, because as we have held earlier in this opinion, that exception by its terms only applies to situations in which, but for the constitutional error, no reasonable factfinder would have found the applicant "guilty of the underlying offense." It does not fit sentence stage claims. We will now examine the two subclaims against the § 2244(b)(2)(A) exception to the second application bar.

We begin with the claim that Medina is innocent of or ineligible for the death sentence he received. In order to prevail on such a claim an applicant would have to show constitutional error invalidating all of the aggravating circumstances upon which the sentence was based. There were two in Medina's case: the especially heinous, atrocious and cruel nature of the crime; and the fact that murder was committed for pecuniary gain. The § 2244(b)(2)(A) exception to the bar against second applications applies only where the claim relies "on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." The term "previously unavailable" means unavailable at the time the first federal habeas application was filed. *See, e.g., Felker v. Turpin*, 83 F.3d 1303, 1306 (11th Cir.1996). The proposition that one innocent of or ineligible for the death sentence may not be executed does not rely on a new rule of constitutional law that was not available when Medina's first habeas application was filed in 1991.

Another reason why this claim is barred is that its contents or the component parts do not fit the exception. In order to prevail on this claim Medina would have to show that both the aggravating circumstances supporting his death sentence were constitutionally infirm, and to fit within the § 2244(b)(2)(A)

exception he would also have to show that the constitutional infirmity of each aggravating circumstance is based upon a new rule of constitutional law that was not available at the time of his previous federal habeas application.

Whatever may be the situation with the especially heinous, atrocious or cruel aggravating circumstance, it is clear that Medina's claim that the pecuniary gain jury instruction was invalid is not based on a Supreme Court decision that was unavailable to him in 1991. Instead, he bases that claim on Florida Supreme Court decisions, most of which date from the 1980's. For these reasons, Medina has failed to make the requisite prima facie showing required by § 2244(b)(3)(C) that his sentence innocence or ineligibility claim or subclaim fits within either of the § 2244(b)(2) exceptions.[2]

The same is true of the disproportionality component or subclaim. It is not based upon a United States Supreme Court decision establishing a new rule of constitutional law, made retroactive to cases on collateral review by that Court, which was unavailable at the time Medina filed his first federal habeas application in 1991. Thus, he has failed to make the requisite § 2244(b)(3)(C) prima facie showing as to this part of the sentence claim, too. For all of these reasons, we decline to issue a certificate authorizing Medina to file a second application raising his sentence innocence or ineligibility claim.[3]

## CONCLUSION

Medina's application for permission to file a second habeas corpus petition in the dis-

2. An additional, independently adequate reason why Medina is not entitled to a certificate authorizing him to file a second application raising this claim is that he raised in his first habeas application an identical claim insofar as the especially heinous, atrocious and cruel aggravating circumstance is concerned. *See Medina*, 59 F.3d at 1112–14. Section 2244(b)(1) clearly provides: "A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be

dismissed." That provision appears to admit of no exception, and Medina has suggested none.

3. Medina all but concedes that under the AEDPA amendments he is not entitled to bring this claim in a second habeas application. *See* Application for Permission to File a Second Habeas Corpus Petition at 2 (stating that "the Act does not appear to permit consideration of" such a claim).

trict court, motion for a stay of execution, application for a certificate of probable cause to appeal, motion for oral argument, and all other motions and applications pending in this Court are DENIED.