Ramon **MARTINEZ–VILLAREAL,**
Petitioner,

v.

Terry **STEWART, Respondent.**

Ramon **MARTINEZ–VILLAREAL,**
Petitioner,

v.

Terry **STEWART, Respondent.**

Nos. 97–80229, 97–80249.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 9, 1997.

Submitted June 9, 1997. *

Decided June 23, 1997.

---

* The panel unanimously finds this case suitable for submission without oral argument pursuant to

Fredric F. Kay, Federal Public Defender, Denise I. Young, Assistant Federal Public Defender, Dale A. Baich, Office of the Federal Public Defender, Phoenix, AZ, Sean D. O'Brien, Public Interest Litigation Clinic, Kansas City, MO, for petitioner.

Bruce M. Ferg, Assistant Attorney General, Tucson, AZ, for respondent.

Before: D. W. NELSON, LEAVY, and T. G. NELSON, Circuit Judges.

Order; Concurrence by Judge T. G. Nelson.

PER CURIAM.

Petitioner has moved for permission to file a successive habeas corpus petition in the district court pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified in relevant part at 28 U.S.C. § 2244. We hold that § 2244's prohibition on second or successive petitions does not apply to a petition that raises only a competency to be executed claim under *Ford v. Wainwright*, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986).

### I.

Ramon Martinez–Villareal was convicted on two counts of first-degree murder and was sentenced to death. *See State v. Martinez–Villareal*, 145 Ariz. 441, 702 P.2d 670 (1985). Martinez–Villareal filed a petition for habeas corpus in the federal district court on March 25, 1993. He asserted, inter alia, that he was not competent to be executed. The district

Fed. R.App. P. 34(a) and Ninth Cir. R. 34–4.

court dismissed this claim without prejudice as premature[1] and granted the writ on other grounds. We reversed the district court's decision but explained that "[o]ur instruction to enter judgment denying the petition is not intended to affect any later litigation of [the competency to be executed] question." *Martinez–Villareal v. Lewis,* 80 F.3d 1301, 1309 n. 1 (9th Cir.1996).

On remand to the district court, Martinez–Villareal moved the court to reopen the first habeas proceeding. Martinez–Villareal feared that the newly enacted AEDPA would foreclose review of his competency claim on a second petition despite the parties' and the court's intention to address the claim once a warrant of execution had issued. On March 24, 1997, the district court denied the motion and reassured Martinez–Villareal that it had "no intention of treating the 'incompetency to be executed' claim as a successive petition."

On May 16, 1997, despite this assurance, the district court recognized that "as a result of the AEDPA, it does not have jurisdiction to entertain" Martinez–Villareal's competency claim. The district court noted that "the AEDPA effectively deprives all federal district courts of jurisdiction to entertain second petitions raising Eighth Amendment 'competency to be executed' claims." On May 19, 1997, we stayed Martinez–Villareal's execution to consider whether this is indeed the case and, if so, whether it constitutes a suspension of the writ of habeas corpus.

## II.

*Ford v. Wainwright* holds that the Eighth Amendment "prohibits a state from carrying out a sentence of death upon a prisoner who is insane." 477 U.S. at 409–10, 106 S.Ct. at 2602. However, the determination of whether an inmate is competent to be executed cannot be made before the execution is imminent, i.e., before the warrant of execution is issued by the state. *See Herrera v. Collins,* 506 U.S. 390, 406, 113 S.Ct. 853, 863, 122 L.Ed.2d 203 (1993) ("[T]he issue of sanity is properly considered in proximity to the execution.").

When Martinez–Villareal first raised his competency claim in federal court, the State of Arizona had not yet issued a warrant of execution. Thus, although we disposed of every other claim raised by Martinez–Villareal in his first habeas petition, we declined to address his competency claim because it was premature. *See Martinez–Villareal,* 80 F.3d at 1309 n. 1.

■ Even if the State had issued its warrant of execution prior to our consideration of Martinez–Villareal's first habeas petition, his competency claim still would have been premature. In *Lonchar v. Thomas,* —— U.S. ——, ——, 116 S.Ct. 1293, 1297, 134 L.Ed.2d 440 (1996), the Supreme Court instructed that "if the district court cannot dismiss the [first habeas] petition on the merits before the scheduled execution, it is obligated to address the merits and must issue a stay to prevent the case from becoming moot." Once this stay has been issued, the execution is not imminent, and the competency claim becomes premature. Accordingly, a competency claim cannot be asserted in a first habeas petition.

■ Under the AEDPA, such a claim cannot be asserted in a second petition either. Section 2244 of the AEDPA divides the world of second or successive petitions into two categories: Those that raise claims that were presented in a previous petition, and those that raise claims that were not presented in a previous petition. A claim that was presented in a prior petition must be dismissed. 28 U.S.C. § 2244(b)(1). This sanction applies to a competency claim raised in a first petition

---

1. It was the State of Arizona that had suggested to the district court that Martinez–Villareal's competency claim was not ripe for adjudication. The State pressed the importance of having

    a single adjudication of competency, *at a time when all [of Martinez–Villareal's] other claims have been resolved and a warrant has been issued,* so that an execution actually is immi-

nent within a reasonable period of time.... To do a competency determination now would be futile, because it will certainly have to be repeated when the time for execution finally arrives.

State of Arizona's Reply to Response to Motion for Summary Judgment, Dec. 17, 1993, at 45–46 (emphasis added).

even though that claim can never be adjudicated because it will always be premature. Accordingly, a petitioner must reserve his colorable competency claim and present it as a new claim in a second petition. But a claim that was not presented in a prior petition must be dismissed unless

> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (B) (i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
>
> > (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b)(2).

The gateway described in subsection (A) does not apply to a competency claim because the constitutional right upon which such a claim is based was announced in 1986. The gateway described in subsection (B) does not apply because competency to be executed is not an issue of guilt or innocence. *See Greenawalt v. Stewart*, 105 F.3d 1268, 1277 (9th Cir.) ("[T]he new 28 U.S.C. § 2244(b)(2)(B) forecloses all successive-petition review of constitutional claims unrelated to guilt or innocence."), *cert. denied*, —— U.S. ——, 117 S.Ct. 794, 136 L.Ed.2d 735 (1997). It thus appears that the automatic stay accompanying a first habeas petition and the inapplicable gateways provided by the AEDPA foreclose any federal review of a death row inmate's competency to be executed.

### III.

We are asked to decide whether this predicament constitutes an unconstitutional suspension of the writ of habeas corpus. The Suspension Clause provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const., Art. I, § 9, cl. 2.[2] Martinez–Villareal has demonstrated that a district court will never be able to hear his (or anybody's) competency to be executed claim. Whether this amounts to an unconstitutional suspension of the writ depends upon whether *any* federal court is authorized to entertain Martinez–Villareal's competency claim.

We already have noted how the new statute precludes a federal district court from hearing a colorable competency claim on either a first or second petition. Thus, whether the writ has been suspended depends upon whether or not the Supreme Court may entertain a colorable competency claim in the exercise of its jurisdiction to hear original habeas applications.[3]

This question was not specifically answered in *Felker*. In *Felker*, the Court concluded that the "gatekeeping" system of the new Act, codified at 28 U.S.C. § 2244(b)(3), whereby a petitioner must obtain the permission of the court of appeals before filing a second or successive petition in the district court, "does not apply to our consideration of habeas petitions because it applies to applications 'filed in the district court.'" *Felker v. Turpin*, —— U.S. ——, ——, 116 S.Ct. 2333, 2339, 135 L.Ed.2d 827 (1996). But the Court did not decide the question of whether it was

---

**2.** The State correctly observes that the writ known to the Framers "was quite different from that which exists today." *Felker v. Turpin*, —— U.S. ——, ——, 116 S.Ct. 2333, 2339, 135 L.Ed.2d 827 (1996). But like the Supreme Court, we assume that "the Suspension Clause of the Constitution refers to the writ as it exists today, rather than as it existed in 1789." *Id.* at ——, 116 S.Ct. at 2340.

**3.** We reject the suggestion that direct review by the Supreme Court of the state court's competency proceedings suffices to sustain § 2244 against

constitutional attack. Certiorari review does not amount to an adequate alternative form of collateral relief, *see Swain v. Pressley*, 430 U.S. 372, 381, 97 S.Ct. 1224, 1229–30, 51 L.Ed.2d 411 (1977), because it is not collateral review at all. We recognize that this conclusion directly contradicts the Eleventh Circuit's decision in *In re Medina*, 109 F.3d 1556, 1564 (11th Cir.1997) ("review [of a competency claim] could be sought through certiorari review of the state court competency proceedings").

bound by the restrictions imposed by §§ 2244(b)(1) and (2)-the subsections that specifically foreclose consideration of Martinez–Villareal's competency claim.

The Court did, however, provide us with signposts suggesting its future response to this question. First, the Court noted that "[w]hether or not we are bound by these restrictions [of §§ 2244(b)(1) and (2) ], they certainly inform our consideration of original habeas petitions." *Id.*

Second, the Court's reason for concluding that it is *not* bound by § 2244(b)(3) strongly suggests that it *is* bound by §§ 2244(b)(1) and (2). Section 2244(b)(3) discusses petitions that are filed "in the district court." The Supreme Court inferred that Congress therefore did not intend for that subsection to apply to petitions filed in the Supreme Court. Unlike § 2244(b)(3), §§ 2244(b)(1) and (2) do not contain limiting language and refer generally to all second or successive petitions. If § 2244(b)(3) does not apply to the Supreme Court because it is expressly limited to petitions filed in the district court, then §§ 2244(b)(1) and (2) should apply to the Supreme Court because they are not similarly limited.

Taken together, these signposts suggest that even the Supreme Court is bound by the new limitations on habeas review imposed by § 2244(b)(1) and (2).[4] If we are correct, then a state prisoner's competency claim can never be heard by any federal court.

The constitutional problem with this preclusion is patent. Indeed, the Supreme Court upheld the AEDPA's gatekeeping provisions against attack under the Suspension Clause because such provisions were a "modified res judicata rule, a restraint on what is called in habeas corpus practice 'abuse of the writ.' " *Felker*, —— U.S. at ——, 116 S.Ct. at 2340. But the restrictions on successive petitions containing a colorable competency claim cannot be justified as a modified res judicata rule because res judicata cannot apply to a claim that will always be premature on a first petition.

We are left, then, with strong indications that under these narrow circumstances, the new statute poses a serious constitutional problem.[5]

## IV.

■ We need not decide this difficult constitutional question because we conclude that Martinez–Villareal's competency claim does not fall within the rubric of § 2244. *See DeBartolo Corp. v. Florida Gulf Coast Trades Council,* 485 U.S. 568, 575, 108 S.Ct. 1392, 1397–98, 99 L.Ed.2d 645 (1988) ("Where an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress."); *Tashima v. Administrative Office of the U.S. Courts,* 967 F.2d 1264, 1268 (9th Cir.1992).

In *In re Turner,* we concluded that "section 2244 does not apply to second or subsequent habeas petitions where the first petition was dismissed without prejudice for failure to exhaust state remedies." 101 F.3d 1323, 1323 (9th Cir.1996). The Second Circuit arrived at the same conclusion in *Camarano v. Irvin,* 98 F.3d 44 (2d Cir.1996). The *Camarano* court confronted the question of "whether a habeas petition qualifies as a 'second or successive' application within

---

4. We recognize that the Eleventh Circuit has reached the opposite result. We believe, however, that *In re Medina* is based upon a misreading of *Felker.* *Medina*'s conclusion that "the provisions of § 2244(b), as amended, do not restrict [the Supreme] Court's original habeas authority," 109 F.3d at 1564, ignores both the Court's statement that it is at least "informed" by §§ 2244(b)(1) and (2), as well as the literal distinction between § 2244(b)(3) and §§ 2244(b)(1) and (2).

5. *Greenawalt* did not resolve the constitutional question with which we are faced. The *Greena-* walt court rejected the petitioner's claim that § 2244 "forecloses all successive-petition review of constitutional claims unrelated to guilt or innocence." 105 F.3d at 1277; *see also Medina,* 109 F.3d at 1565 (stating that the "plain terms" of § 2244(b)(2)(B) make it clear that "it has no application to claims that relate only to the sentence"). However, *Greenawalt*'s sentencing claim was the type of claim that could be raised and addressed in a first petition. As we have explained, Martinez–Villareal's competency claim will never be addressed on its merits in a first petition.

the meaning of § 2244, where it is filed after a prior petition is dismissed without prejudice for failure to exhaust state remedies." *Camarano,* 98 F.3d at 46. The court concluded that "because application of the gatekeeping provisions [of § 2244] to deny a resubmitted petition in cases such as this would effectively preclude any federal habeas review .... a dismissal without prejudice can have no preclusive effect on subsequent petitions." *Id.* at 46–47; *see also Christy v. Horn,* 115 F.3d 201 (3d Cir.1997).

*Turner* and *Camarano* are founded upon exhaustion principles. Where a state prisoner has failed to exhaust state remedies, the federal habeas court may not grant his petition. 28 U.S.C. § 2254(b)(1). This rule obtains even where a habeas application contains both exhausted and unexhausted claims. *See Rose v. Lundy,* 455 U.S. 509, 522, 102 S.Ct. 1198, 1205, 71 L.Ed.2d 379 (1982) ("A district court must dismiss habeas petitions containing both unexhausted and exhausted claims."). Where *Rose* applies, a petitioner must return to state court and litigate the unexhausted claims before presenting those claims in a new habeas petition to the federal court.

*Rose* aims to "protect the state court's role in the enforcement of federal law and prevent disruption of state judicial proceedings." *Rose,* 455 U.S. at 518, 102 S.Ct. at 1203. But *Rose* also ensures that a petitioner's federal claims, once exhausted, will be subject to federal review by demanding that a petition containing both exhausted and unexhausted claims be dismissed in its entirety.[6]

*Turner* and *Camarano* sustained the viability of this scheme by ensuring that once all claims had been properly exhausted in the state courts, the state prisoner would still be able to raise his federal claims in a federal forum. To accomplish this result, both courts held that the new statute's reference to "second or successive petition" does not encompass petitions that are filed after original applications were dismissed in their entirety for failure to exhaust state remedies.

We are faced with a different situation. *Rose* did not require the dismissal of Martinez–Villareal's first petition in its entirety because we determined that his competency claim was premature, rather than unexhausted. Unlike the cases of *Turner* and *Camarano,* we now address a situation in which there has been a federal decision on all but one of Martinez–Villareal's constitutional claims.

We conclude, however, that the rationale underlying *Turner* applies with equal force to Martinez–Villareal's competency claim. Just as we must dismiss petitions containing unexhausted claims, we must dismiss a competency claim raised in a first petition because it will always be premature. Just as we dismiss unexhausted claims to permit state courts to pass first judgment on those claims, we dismiss a competency claim so that the state court may have the first opportunity to consider that claim once a warrant of execution has issued. And just as we permit an exhausted petition to be heard in federal court even after it had been dismissed previously as unexhausted, so too should we permit a ripe competency claim to be heard in federal court even after it had been dismissed previously as premature. *Turner* reached this result to ensure that a petitioner's federal claims are accorded one hearing in federal court. We now extend *Turner* to competency claims that previously were dismissed without prejudice as premature in order to ensure that such claims are likewise subject to federal review.

We believe that this result is justified by the fact that the normal procedural path contemplated by *Rose* and protected by *Turner* does not permit a federal court to consider a petitioner's competency claim. Let us suppose that we had dismissed Martinez–Villareal's first petition in its entirety pursuant to *Rose.* Let us also suppose that the State then issued a warrant of execution, thereby enabling Martinez–Villareal to exhaust his competency claim in state court.

---

**6.** The *Rose* Court could have permitted a federal court to dismiss only a petitioner's unexhausted claims and entertain the exhausted ones on the merits. But the abuse of the writ doctrine probably would have precluded federal review of the remaining claims once those claims had been exhausted in state court and raised in a second petition. The *Rose* Court avoided this result by requiring dismissal of a mixed petition in its entirety.

Finally, let us suppose that upon exhaustion of this claim, Martinez–Villareal brought a consolidated habeas petition to the federal courts containing all of his constitutional complaints, including his competency claim.

Under the rationale of *Rose* and the holding of *Turner*, we would construe this application as if it were Martinez–Villareal's first habeas petition. We would therefore be required to issue a stay of execution so that the federal court could entertain (for the first time) his constitutional claims. The federal stay of execution, of course, would render his once-ripe competency claim premature, even though it has been exhausted in the state court. Thus, while this petition may be heard under *Rose* and *Turner*, the competency claim cannot be addressed until a second warrant of execution issues, the state court once again determines that the petitioner is competent, and the claim reappears before a federal court. Of course, at this point the federal court is precluded from reviewing the competency claim if it is deemed a "second or successive" petition barred by § 2244(b).

As the foregoing analysis indicates, application of *Rose* to a petition that includes a competency claim does not afford any opportunity for federal review. Moreover, to dismiss an entire first petition on the basis of an unexhausted competency claim ultimately will violate one of the animating purposes behind *Rose* and modern habeas jurisprudence. Under *Rose*, the state court must have the first opportunity to consider Martinez–Villareal's competency claim. But the state court's judgment will always be discarded as moot once the exhausted petition reaches the federal court and the mandatory stay issues. As a result, the state will always be required to begin again with the competency claim once the exhausted petition is adjudicated by the federal court, the prema-

ture competency claim is sent back to the state, and a new warrant of execution has issued. To say the least, this neither "protect[s] the state court's role in the enforcement of federal law," nor "prevent[s] disruption of state judicial proceedings." *Rose*, 455 U.S. at 518, 102 S.Ct. at 1203.

We believe that our extension of *Turner* to a competency claim that was originally dismissed without prejudice as premature avoids both a probable constitutional problem and unwarranted disrespect of state judicial proceedings. Under our holding, a competency claim must be raised in a first habeas petition, whereupon it also must be dismissed as premature due to the automatic stay that issues when a first petition is filed. Once the state issues a second warrant of execution and the state court considers the now-ripe competency claim, a federal court may hear that claim-and only that claim-because it was originally dismissed as premature and therefore falls outside of the rubric of "second or successive" petitions.[7]

Our holding is a narrow one that is inherently limited by the unique nature of a competency claim. Indeed, we can think of no other situation where a first petition meets *Rose*'s exhaustion requirement but a claim raised by that petition must be tabled as premature. We extend *Turner* to this circumstance, and this circumstance only.

## V.

Martinez-Villareal's competency claim is not subject to the restrictions imposed by § 2244(b). Therefore, we dismiss as unnecessary Martinez–Villareal's motion for authorization to file a petition for writ of habeas corpus in the district court. We transfer the petition presented to Judge D.W. Nelson on May 30, 1997 (Docket No. 97–80249), to the

---

7. Indeed, we question whether the successive petition and abuse of the writ doctrines even apply to competency claims. As the Seventh Circuit recently noted, "[s]ection 2244(b) uses, but does not define, the phrase 'second or successive habeas corpus application.'" *Benton v. Washington*, 106 F.3d 162, 163 (7th Cir.1996). Due to its exceptional procedural posture, a petition raising only a competency claim might not be covered by this phrase. *See Fearance v. Scott*, 56 F.3d 633, 640 (5th Cir.1995) ("Because *Ford*

claims ... concern the petitioner's immediate mental state, neither this court nor the Supreme Court has definitively decided whether relief would appropriately be denied on either abuse of the writ or successive petition grounds."); *Barnard v. Collins*, 13 F.3d 871, 878 (5th Cir.1994) ("[O]ur research indicates no reported decision in which a federal circuit court or the Supreme Court has denied relief of a petitioner's competency-to-be-executed claim on grounds of abuse of the writ.").

district court pursuant to 28 U.S.C. § 2241(b).[8]

T.G. NELSON, Circuit Judge, specially concurring:

In my view, the 1996 Act unconstitutionally suspends the writ of habeas corpus as to competency to be executed claims. It does so in an unambiguous fashion, by prohibiting the consideration of claims in second or successive petitions that do not fit the exceptions found in § 2244(b)(1) and (2). As we point out in the order, Martinez–Villareal's competency to be executed claim cannot come within the statutory exceptions.

In *Turner*, we "looked through" a prior petition that had been dismissed without action. Since the earlier petition had no practical or legal effect, it was appropriate to simply ignore it. By contrast, the petition which was the subject of our prior opinion was perhaps Martinez–Villareal's third try at getting into federal court, and was extensively litigated by the parties, to the point of denial of *certiorari* by the Supreme Court. 80 F.3d 1301 (9th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 588, 136 L.Ed.2d 517 (1996). Thus, I don't believe *Turner* justifies our ignoring several years of litigation in the federal courts.

The law as it existed prior to the Act gave state prisoners the *opportunity* to present all their federal claims in federal court. They could lose the opportunity if they neglected to include a claim in a first petition. However, "old" § 2244(b) allowed the consideration of successive petitions containing "new grounds," if the "ends of justice" would be served. This opportunity was eliminated by the 1996 amendments to § 2244.

As we noted in our prior opinion, a petitioner could come to federal court with a "procedurally defaulted claim if the petitioner can show cause for the procedural default and actual prejudice as a result of the alleged violations of federal law." 80 F.3d at 1305. A showing of cause required the petitioner to demonstrate the existence of an objective factor external to the defense which ham-

pered efforts to comply with the procedural rule. *Id.* (citing *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)). The lack of ripeness of a claim of incompetence to be executed would appear to be a classic case of an external impediment to presentation of the claim.

Thus, on April 23, 1996, a claim involving lack of competency to be executed could be considered in a successive petition filed in federal court. On April 24, 1996, and since, under the clear terms of § 2244, such claims simply cannot be considered by any federal court, in spite of the fact that there was no earlier opportunity to do so. If the writ has not been suspended as to those claims, it is difficult to see how it can ever be suspended as to any class of claims.

My conclusion that the writ has been suspended as to claims such as Martinez–Villareal's would require an analysis of the appropriate remedy to ensure that Martinez–Villareal could get to federal court. The remedy we order, the transfer to the district court of the petition filed here, is an appropriate one, and I fully concur in the result.

---

8. Henceforth, a state prisoner in Martinez–Villareal's situation-that is, one who seeks to file a petition that contains *only* a competency to be

executed claim where such claim previously had been dismissed as premature-may file such a petition directly with the district court.