In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2887

United States of America,

Plaintiff-Appellee,

v.

Darin D. Gilliam,

Defendant-Appellant.

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. IP 99-153-CR-01-B/F--Sarah Evans Barker, Judge.

Argued April 19, 2001--Decided June 28, 2001


   Before Flaum, Chief Judge, and Harlington
Wood, Jr., and Rovner, Circuit Judges.

   Flaum, Chief Judge.  After being
indicted on drug conspiracy and
possession charges, Darin Gilliam decided
to enter into a plea agreement with the
government. Gilliam's attorney informed
his client that, pursuant to the
agreement, Gilliam's sentence likely
would be in the range of eight years.
However, Gilliam was advised that his
prior criminal record could cause his
sentence to be lengthened. Unbeknownst to
the government and defense counsel at the
time the agreement was drafted, Gilliam
did have an extensive criminal record--
one, in fact, that qualified him for
career offender status. When that
information was revealed, Gilliam was
informed that, as a career offender, his
sentence would be in the range of twenty
two years. Nevertheless, Gilliam stated
his desire to be held to the terms of the
agreement, and entered his plea of
guilty. Gilliam was sentenced to 262
months incarceration and now appeals,
arguing that his plea was involuntary and
that the indictment upon which he was
charged was deficient. For the reasons
stated herein, we affirm the conviction
and sentence imposed by district court.

I.  BACKGROUND

Darin Gilliam first came to the attention of Indianapolis, Indiana, drug enforcement agents when a client of his, Maceo Wells, was arrested on drug conspiracy charges. Wells, who decided to cooperate with the authorities in hopes of reducing his sentence, named Gilliam as his cocaine supplier, and agreed to set up a controlled purchase from Gilliam. Arrangements were made for Gilliam, along with his accomplice, Arthur Brown, to transport one and one-half kilograms of cocaine from Los Angeles, California, to Indianapolis for sale to Wells and another individual. Shortly after Gilliam and Brown's arrival in Indianapolis, a search warrant was executed for Gilliam's hotel room. Agents conducting the search recovered the one and one-half kilograms of cocaine, as well as various incriminating documents. Gilliam and Brown were subsequently arrested.

On December 7, 1999, a grand jury in the Southern District of Indiana charged Gilliam with a two-count indictment. Count One stated that from October 25, 1999 through November 9, 1999, Gilliam conspired to possess with intent to distribute, and to distribute, cocaine, in violation of 21 U.S.C. sec.sec. 841(a)(1) and 846. Count Two alleged that on November 9, 1999, Gilliam knowingly possessed with the intent to distribute approximately one and one-half kilograms of cocaine, in violation of 21 U.S.C. sec. 841(a)(1) and 18 U.S.C. sec. 2.

Rather than face trial, Gilliam decided to cooperate with the government. On February 23, 2000, a petition to enter a plea of guilty was filed. According to the attached plea agreement, the defendant would plead guilty to Count One of the indictment. Gilliam acknowledged in the agreement that the applicable statutory penalty was a minimum sentence of ten years, and a maximum of life imprisonment. Gilliam further noted that "the final determination concerning the applicable guideline calculation, criminal history category, and sentencing guideline range [would] be made by the Court." Gilliam also understood that if the court decided to impose a sentence higher or lower than any recommendation of either party, or determined that a different sentencing guideline range applied in this case, or decided to

depart from the otherwise applicable sentencing guideline range pursuant to 18 U.S.C. sec. 3553(b), then Gilliam would not be permitted to withdraw his plea of guilty. In exchange for Gilliam's plea and agreement to cooperate with the government concerning Wells' case, the government agreed to move to dismiss Count Two of the indictment, and to request a reduction of up to three levels for sentencing purposes for Gilliam's future cooperation./1

   According to the agreement, the base offense level for Gilliam's drug conspiracy was set at 32. Two points were to be added because Gilliam supervised Brown, and three points deducted for Gilliam's acceptance of responsibility. Additionally, assuming Gilliam continued to provide the government with substantial assistance, the government would request the aforementioned three level reduction. Thus, assuming, as Gilliam's attorney had done at the time of the negotiations, that Gilliam's criminal history category was IV, Gilliam could have qualified for a sentencing range of 110 to 137 months. Gilliam's attorney had explained to his client that, in his best judgment, Gilliam would receive a sentence of approximately eight years. However, counsel cautioned his client that Gilliam's past criminal history could enhance that sentence. At the time that Gilliam filed his agreement, neither the government nor his attorney was aware of the extent of Gilliam's criminal history.

   On April 20, 2000, Gilliam's criminal history, along with the ramifications of that history for sentencing purposes, were disclosed to him in his Presentence Investigation Report ("PSR"). The report noted that among the myriad of prior run-ins Gilliam had with the law were a 1988 conviction for assault with a deadly weapon with great bodily injury and a 1990 conviction for assault with a deadly weapon. Because Gilliam had been convicted of two prior felonies that were crimes of violence and because his present conviction was a controlled substance offense, the Sentencing Guidelines classified Gilliam as a career offender. See U.S.S.G. sec. 4B1.1. The PSR noted that, as a career offender, Gilliam's criminal history category should be set at VI. Furthermore, because

Gilliam's present offense carried astatutory maximum penalty of life imprisonment, his offense level was to be set at 37. See id. Thus, deducting three points for Gilliam's acceptance of responsibility, his Guidelines range was 262 to 327 months of imprisonment.

Almost two months later, on July 13, 2000, Gilliam appeared before the district court for his change of plea and sentencing hearing. At that hearing, Gilliam informed the court that while he could not read or write very well, his counsel had read to him all the relevant documents in his matter, including the indictment, the plea agreement and the PSR. When the district court questioned Gilliam, he showed unease regarding the possible length of his sentence. He informed the court that at the time he entered into the written agreement, he was under the impression from his attorney that his sentence would be in the range of eight years. The court, after questioning Gilliam's attorney, explained to the defendant that his counsel's estimate of an eight year sentence was "a good judgment" in light of the facts known to him at that time the agreement was entered into. However, the court stated that with the additional information of Gilliam's past criminal record, his sentencing range was closer to 21 years. Additionally, the court explained to Gilliam that if he wished not to enter his guilty plea, he could proceed to trial and force the government to prove his guilt beyond a reasonable doubt. Gilliam acknowledged that his attorney had provided him with similar information, and stated that he did not wish for the court to read the PSR aloud to him. Thereafter, Gilliam informed the court that he still wished to enter his plea of guilty. After hearing testimony regarding the facts surrounding Gilliam's arrest from drug enforcement agent Baker, the court asked Gilliam for his plea. The defendant plead guilty and was sentenced to 262 months imprisonment, followed by five years of supervised release.

Gilliam now appeals his sentence, arguing primarily that his plea was not knowingly and voluntarily entered into. Additionally, Gilliam asserts that his plea of guilty was entered under a defective indictment and that the Sentencing Guidelines mandate that he

receive a lesser sentence.

## II.  DISCUSSION

### A.  Knowing and Voluntary Nature of Gilliam's Plea

Gilliam's initial assertion on appeal is that, as a result of the government and defense counsel's failure to evaluate his criminal record prior to entering into a plea agreement, Gilliam's plea was not knowingly and intelligently made. According to the defendant, "the [g]overnment's negligence, and that of defense counsel in not pursuing this information, put the [d]efendant into a position of accepting a plea on one set of guidelines and being sentenced on something greater." Gilliam further contends that the district court's decision to have the plea hearing and the sentencing on the same day subjected him to a conflict that he could not overcome in the time frame given.

As the Supreme Court long ago noted "[a] defendant who enters [a guilty] plea simultaneously waives several constitutional rights, including his privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers. For this waiver to be valid under the Due Process Clause, it must be an intentional relinquishment or abandonment of a known right or privilege." McCarthy v. United States, 394 U.S. 459, 466 (1969) (internal citation omitted). If the plea is not voluntary and knowing, then it violates due process, and is thus void. "Moreover, because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." Id.

We have stated that when a defendant does not move, while still before the district court, to withdraw that plea of guilt, the demanding standard of plain error must guide our review. See United States v. Driver, 242 F.3d 767, 769 (7th Cir. 2001); United States v. Hicks, 129 F.3d 376, 378 (7th Cir. 1997); see also United States v. Olano, 507 U.S. 725, 736 (1993). Thus, because Gilliam did not previously challenge the knowing and

voluntary nature of his plea, in order to vacate that plea, we must find that (1) an error has occurred, (2) it was "plain," (3) it affected a substantial right of the defendant, and (4) it seriously affected the fairness, integrity, or public reputation of the judicial proceedings. See Johnson v. United States, 520 U.S. 461, 466-67 (1997).

We conclude that Gilliam cannot establish the first requirement necessary for finding of plain error; namely, that the district court committed any error. It is not in dispute that, at the time he entered into a plea agreement with the government, Gilliam believed he would receive a sentence of approximately eight years. Furthermore, it is obvious that the sentence imposed by the district court was grossly larger than Gilliam had understood it would be at the time he agreed to plea guilty. However, an attorney's prediction or representation regarding the length of a client's sentence, if later proven to be inaccurate, will not necessarily render the client's plea unwitting or involuntary. See Bridgeman v. United States, 229 F.3d 589, 592 (7th Cir. 2000).

Gilliam glosses over the fact that he did not learn the impact the Guidelines would have on his sentence on the date of his sentencing. Gilliam received the PSR on April 20. That document made patent that, despite any assertion by his attorney, Gilliam's conviction would require that he be treated as a career offender. The PSR noted that, according to the provisions of the Sentencing Guidelines, Gilliam should receive a sentence of 262 to 327 months. By Gilliam's own admission, between April 20 and July 13, the date sentencing was imposed, Gilliam had the PSR read and explained to him numerous times. Furthermore, at the time Gilliam did enter his plea of guilt, the district court clearly explained the consequences of the career offender status and the impact it would have if he agreed to plea. Gilliam acknowledged that he was aware of those ramifications, and that he was voluntarily choosing to plead guilty. A defendant's assertions as to the voluntary nature of his plea during a change of plea hearing are presumed to be

truthful. See Bridgeman, 229 F.3d at 592.

In examining whether a plea was knowingly and voluntarily entered, we inspect the circumstances surrounding the plea, in order to determine whether the defendant was informed of his rights and understood the consequences of his plea. See United States v. Godwin, 202 F.3d 969, 971 (7th Cir. 2000). Gilliam was free, from the moment he signed the plea agreement, to the day of the change of plea hearing, to revoke his plea agreement. The agreement did not become binding on him until the moment he informed the court that he wished to hold by the agreement. The court, recognizing Gilliam's prior misunderstanding, gave the defendant multiple opportunities to withdraw his plea. Gilliam chose not to.

Had Gilliam, at the moment he entered his plea, been unaware of the impact the Guidelines would have on his sentence, that lack of knowledge would not require the vacating of his plea. "Generally, the fact that a defendant underestimated his sentence when entering his plea is not a fair and just reason to permit him to withdraw that guilty plea." United States v. Knorr, 942 F.2d 1217, 1220 (7th Cir. 1991). Certainly, under these circumstances, where any underestimation was corrected prior to sentencing, there is no reason to vacate the guilty plea. Thus, we find that Gilliam's sentence was knowingly and voluntarily entered into.

B.  Deficiencies of the Indictment

Gilliam's second contention on appeal is that the indictment upon which he pled guilty was defective. Count I of the indictment charged Gilliam with violating 21 U.S.C. sec.sec. 841(a)(1) and 846. That indictment did not identify the exact quantity of drugs to be used against Gilliam for purposes of charging factors. According to Gilliam, the district court's decision to sentence him to a term greater than the statutory maximum set forth in sec. 841(b)(1)(C) thus resulted in a violation of the Supreme Court's decision in Apprendi v. New Jersey, 530 U.S. 466 (2000)./2

Because Gilliam did not raise this Apprendi claim at the time he was sentenced, our review is only for plain error. See Nance, 236 F.3d at 824. As we

noted above, this means we must determine (1) whether there was error at all, (2) if so, whether it was plain, (3) whether the error affected Gilliam's substantial rights, and (4) whether it seriously affected the fairness, integrity, or public reputation of the proceedings. Johnson, 520 U.S. at 466-67. As with most unpreserved Apprendi claims presented to this court, Gilliam fails to establish the fourth prong of the plain-error test. See United States v. Robinson, 250 F.3d 527, 529 (7th Cir. 2001). Thus, we proceed to examine whether the indictment's failure to state the relevant drug quantity affects the fairness, integrity, or public reputation of the judicial proceedings.

When applying the fourth prong of the plain error test to Apprendi cases, we ask whether "it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." Nance, 236 F.3d at 825 (internal citation omitted). In practical terms, we analyze whether there was overwhelming evidence that seven and a half to nine kilograms of cocaine was involved in Gilliam's conspiracy. As in Robinson and United States v. Patterson, 241 F.3d 912 (7th Cir. 2001), the evidence surrounding Gilliam's charge is overwhelming. At no point during the proceedings has Gilliam asserted that less than seven and one half to nine kilograms of cocaine were involved in his conspiracy. Gilliam acknowledged as much when he agreed to a base level of 32 in his plea agreement. Additionally, Gilliam did not challenge the amount of seven and a half to nine, as specifically contained in the PSR. At Gilliam's change of plea hearing, agent Baker testified that Gilliam, by virtue of multiple trips from Los Angeles to Indianapolis, had transported seven and a half to nine kilograms of cocaine. After Baker had completed his testimony, Gilliam confirmed the veracity of Baker's statements. Finally, we note that the plea agreement, the PSR, and the district court, specified that the statutory sentence for a violation of Count I of the indictment was a minimum of ten years and a maximum of life imprisonment. Gilliam's sentence of 262 months was well within that range. Under these circumstances, we believe that the indictments's failure to state the

relevant drug quantity cannot be said to have affected the fairness, integrity, or public reputation of the judicial proceedings.

We note in passing that Gilliam likewise maintains that Count II of the indictment was deficient. Specifically, Gilliam asserts that while he was charged in Count II with violating 21 U.S.C. sec. 841(a)(1) and 18 U.S.C. sec. 2, the indictment fails to incorporate any language of willfulness or aiding and abetting, as contained in 18 U.S.C. sec. 2. Perhaps we would look more favorably upon Gilliam's challenge were it not the fact that Count II of the indictment was dismissed pursuant to the agreement between Gilliam and the government. However, as the Count was dismissed, Gilliam cannot challenge a deficiency contained therein, or earnestly assert that he was harmed in any way by the failure of the indictment to contain the language at issue.

C. Application of the Sentencing Guidelines

Besides raising an Apprendi challenge based on the failure of the indictment to allege the specific quantity of drugs at issue in this case, Gilliam presents an issue relating to the interplay between Apprendi and the appropriate calculations under the career offender guideline, U.S.S.G. sec. 4B1.1. As the plea agreement and the PSR put forth, Gilliam's original base level for purposes of his conspiracy charge was set at 32. However, according to sec. 4B1.1, if a defendant has two prior qualifying convictions, and his present conviction likewise meets the standards set forth in the section, then the individual is considered a career offender. For career offenders, that section of the Guidelines sets a new offense level based upon the "offense statutory maximum," defined as "the maximum term of imprisonment authorized for the offense of conviction." U.S.S.G. sec. 4B1.1 at Application Note 2. Career offenders are also automatically considered to have a criminal history category of VI. Throughout these proceedings, it was assumed that the offense statutory maximum for the offense charged in Count I of Gilliam's indictment was life imprisonment. Such a penalty is authorized for a conviction under 21

U.S.C. sec. 841(b)(1)(A)(ii)(II), the penalty provision applicable to a conviction under sec. 841 involving five or more kilograms of cocaine. Because of Gilliam's prior convictions, he was considered a career offender. Under the table contained in U.S.S.G. sec. 4B1.1, the offense level applicable to a conviction for a crime with an offense statutory maximum of life imprisonment is 37. Gilliam asserts that, because the indictment failed to allege drug quantity, the maximum sentence he was entitled to receive was a term of twenty years, in accordance with sec. 841(b)(1)(C). According to Guideline sec. 4B1.1, if the offense statutory maximum for a conviction is 20 years the new base level is set at 32. Thus, according to Gilliam, had the court applied the career offender guideline to an offense statutory maximum of twenty years instead of life, the offense level would have been 32 instead of 37.

Generally, Apprendi does not require facts pertinent to application of the Sentencing Guidelines to be determined under an elevated burden of persuasion. See Brannigan v. United States, 249 F.3d 584, 587 (7th Cir. 2001). Rather, "it holds only that circumstances affecting the statutory maximum punishment must be established beyond a reasonable doubt to the satisfaction of the trier of fact." Id. However, this is one instance where Apprendi is applicable to a determination made in accordance with the Sentencing Guidelines. This is because U.S.S.G sec. 4B1.1 makes the "offense statutory maximum" the determinative factor in calculating a sentence under the career offender guideline. Therefore, the rule set forth in Apprendi was implicated when the court relied upon an indictment listing no drug quantity, and only referencing sec. 841(a)(1), in setting the offense statutory maximum for career offender purposes at life imprisonment. Thus, while at first blush, Gilliam appears to be presenting an intricate sentencing argument, at its essence, Gilliam is resubmitting his previous Apprendi challenge under a different name.

Though this Apprendi contention is more complex than Gilliam's previous argument, nonetheless, the same standard of review is applied. Because Gilliam is raising

this Apprendi claim for the first time on appeal, Gilliam must once again overcome the hurdle that plain error review creates for him./3 See Nance, 236 F.3d at 824. While we recognize that Apprendi is properly implicated by these facts, as above, we do not believe that the district court's decision seriously affected the fairness, integrity, or public reputation of the judicial proceedings. See United States v. Saya, 247 F.3d 929, 940-42 (9th Cir. 2001) (finding that applying an incorrect offense statutory maximum for career offender purposes implicates Apprendi, but that nonetheless, plain error review still applies). As stated above, at no point during the proceedings did Gilliam ever believe the statutory maximum penalty for Count I was anything other than life imprisonment. Furthermore, though we need not rehash the facts of this case, we are confident that the testimony of both agent Baker and Gilliam overwhelmingly established that Gilliam had dealt in a quantity of drugs sufficient to set his statutory offense maximum at life imprisonment. As such, the application of that maximum for career offender level purposes does not require that we vacate Gilliam's sentence.

D.   Ineffective Assistance of Counsel

  Before concluding, there is one final issue that we must touch upon. In his written submissions to this Court, Gilli am claimed that his trial counsel had rendered ineffective assistance by (1) failing to identify Gilliam's prior criminal history before negotiating the plea agreement, and (2) advising his client to accept the plea agreement on erroneous information. Certainly, Gilliam can raise an ineffective assistance of counsel claim on direct appeal. However, a decision to do so means that our inquiry would be confined to the facts that appear in the record as it now stands. See Godwin, 202 F.3d at 973. As we have noted, that is "a limitation that almost invariably dooms these claims when they are raised on direct appeal." Id. When augmentation of the record is required, 28 U.S.C. sec. 2255 is the proper avenue for raising ineffective-assistance contentions. See Hugi v. United States, 164 F.3d 378, 381 (7th Cir. 1999). Recognizing that his

ineffective assistance claims would be benefitted by evidence not presently contained in the record, at oral argument, Gilliam requested to withdraw these claims, thereby preserving them for a habeas proceeding. Thus, we will not examine the merits of those claims. See United States v. Alcantar, 83 F.3d 185, 191 (7th Cir. 1996).

III.  CONCLUSION

   For the foregoing reasons, we Affirm the conviction and sentence imposed by the district court.

FOOTNOTES

/1 Pursuant to the agreement, Gilliam remained free to argue for further departures.

/2 In Apprendi, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. The implication of Apprendi for defendants charged with drug offenses under 21 U.S.C. sec. 841(a) is that they may not be subjected to a statutorily enhanced sentence based on drug type and quantity, as provided in sec. 841(b), without those elements being charged in the indictment and proven beyond a reasonable doubt. See United States v. Nance, 236 F.3d 820, 825 (7th Cir. 2000).

/3 Perhaps in an effort to avoid the stumbling block that plain error review poses to Apprendi claims, Gilliam attempts to recharacterize his argument as a pure sentencing issue. That restatement does not benefit Gilliam for two reasons. First, pursuant to Gilliam's plea agreement, if we consider this issue a straightforward sentencing issue, then Gilliam has forfeited the right to make such a challenge. Second, to the extent that such a claim would not be deemed forfeited, we would still review under plain error, as Gilliam did not raise the issue below. See Fed. R. Crim. P. 52(b).