In Re: Larry Donnell **FOWLKES**, Movant. **Innocence Project of the National Capital Region, Amicus Curiae.**

No. 02–140.

United States Court of Appeals,
Fourth Circuit.

Argued: Jan. 21, 2003.

Decided: April 18, 2003.

**ARGUED:** Jennifer M. Rubin, Sidley, Austin, Brown & Wood, L.L.P., Washington, D.C., for Movant. Hazel Elizabeth Shaffer, Assistant Attorney General, Office of the Attorney General, Richmond, Virginia, for Respondent. **ON BRIEF:** Kim L. Simmons, Kevin M. Henry, Sidley, Austin, Brown & Wood, L.L.P., Washington, D.C.; Julia E. Sullivan, Crownsville, Maryland, for Movant. Jerry W. Kilgore, Attorney General of Virginia, Office of the Attorney General, Richmond, Virginia, for Respondent. Barry J. Pollack, James P. Ellison,

Nixon Peabody, L.L.P., Washington, D.C., for Amicus Curiae.

Before LUTTIG, WILLIAMS, and GREGORY, Circuit Judges.

Authorization denied by published opinion. Judge LUTTIG wrote the opinion, in which Judge WILLIAMS joined. Judge GREGORY wrote an opinion concurring in the judgement.

## OPINION

LUTTIG, Circuit Judge:

In this motion filed pursuant to 28 U.S.C. § 2244, Larry Donnell Fowlkes seeks authorization to file a successive habeas corpus petition pursuant to 28 U.S.C. § 2254. In his proposed successive petition, Fowlkes seeks to raise an ineffective assistance of counsel claim, a claim under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and an impartial jury claim. We conclude that all of Fowlkes' claims have been previously presented in his initial section 2254 application. Thus, all his claims are barred under section 2244(b)(1). Even were the claims novel, they would fail the requirements of section 2244(b)(2). Because Fowlkes has failed to make a prima facie showing of merit as required by section 2244(b)(3)(C), we deny his request for authorization to file a successive section 2254 motion.

## I.

On October 18, 1995, Bruce Allen and another man forcibly entered the home of Albert and Ida Bowlin. The men stabbed Albert in the neck eight times. He passed out, but was later taken to the hospital where he recovered. Ida Bowlin bled to death on the floor of her kitchen after her throat was cut and she was stabbed in the neck at least five times. The men robbed the couple and left.

In October 1996, a Virginia jury convicted Larry Fowlkes of being, it appears, an accessory before the fact to first degree murder, attempted capital murder, and robbery in connection with the Bowlin incident. The key witness for the prosecution at trial was Sheila Stokes ("Stokes").[1] She testified that she overheard a conversation between Fowlkes, Bruce Allen, and Shardi Moore at her brother's house. According to Stokes, Shardi Moore said he wanted some money, and "he said, '[w]ell, I know where we can get some money from.' And he said—he was talking about some guy over in Amelia County." S.A. 57. Fowlkes replied, "[w]ell, I will take you, but I'm not going to do nothing." S.A. 58. Stokes further testified that she saw Fowlkes the day after the crime and helped him clean blood out of his car. She also stated that Fowlkes later admitted "[t]hey done it, but he didn't have anything to do with it," S.A. 61, and that they had thrown the knife over by the stadium, S.A. 61–62. The jury sentenced Fowlkes to forty-five years imprisonment.

Fowlkes pursued a direct appeal and, later, a state habeas petition, both of which were unsuccessful. In December 1999, Fowlkes filed a federal habeas petition pursuant to 28 U.S.C. § 2254. In his section 2254 motion, Fowlkes presented ineffective assistance of counsel and *Brady* claims;[2] he also argued, based on new

---

1. At the time of trial, her name was Sheila Barbour. We refer to her throughout simply as "Stokes" for clarity.

2. Fowlkes' *Brady* claim was based on the alleged failure of the prosecution to disclose that Stokes had agreed to testify at Fowlkes' trial in exchange for leniency from the prosecution in an unrelated matter.

affidavits that supported his alibi,[3] that he was actually innocent and thus that the procedural bars applicable to his claims should be excused. The district court dismissed the petition as untimely under section 2244(d)(1)(A) and rejected Fowlkes' actual innocence claim.

On appeal, Fowlkes successfully moved to permit supplemental briefing or to remand the case to the district court for additional factual and legal development. In his supplemental briefs, Fowlkes presented, *inter alia,* two new pieces of evidence that are pertinent to the instant motion for authorization. The first was an affidavit of Robert Barbour ("Barbour")[4] dated June 28, 2001, which implicated two different and previously unsuspected men in the Bowlin murder. Moreover, Barbour claimed that the murderer was related to the foreman of Fowlkes' jury and that Stokes had lied in her trial testimony. The second new piece of evidence was an affidavit by Stokes dated July 18, 2001. In her affidavit, Stokes recants all of her trial testimony and states that she had cut a deal with the prosecution whereby the prosecution agreed to drop certain charges against her if she testified in Fowlkes' trial. Fowlkes argued that this new evidence supported his actual innocence claim and his *Brady* claim. Fowlkes also argued that it supported an impartial jury claim, which he raised for the first time in his supplemental briefs. In an unpublished decision, the Fourth Circuit found "no reversible error" and denied a certificate of appealability. *Fowlkes v. Angelone,* 22 Fed.Appx. 211 (4th Cir.2001) (unpublished) ("*Fowlkes I* "). The court also stated

> We grant Fowlkes' motion for supplemental briefing and have considered the issues raised in his supplemental brief; we find those claims meritless. We

deny his request for remand to the district court.

*Id.*

Fowlkes now seeks this court's authorization, under section 2244, to file a successive section 2254 application. In his successive section 2254 motion, Fowlkes presents his ineffective assistance of counsel claim, his *Brady* claim, and his impartial jury claim. And, once again, Fowlkes advances the Stokes and Barbour affidavits as proof of his actual innocence. In response to Fowlkes' section 2244 application, Virginia has submitted a June 18, 2002 affidavit by Stokes wherein she recants her statements made in the July 18, 2001 affidavit submitted by Fowlkes. She claims she was tricked into signing the other affidavit and that "[a]ll of the testimony I gave at the trial of Larry Fowlkes was true." S.A. 2. Virginia has also presented an affidavit by Officer Scruggs, the officer in charge of the Fowlkes case, who says that Stokes called him and told him that she had been tricked into signing a paper that said she lied in the Fowlkes trial.

## II.

Since Fowlkes has previously filed a section 2254 motion, he may only file a successive section 2254 motion if he receives authorization from this court under the standard established in section 2244(b)(3)(C). *See* 28 U.S.C. § 2244(b)(3)(A) ("Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application."). According to section 2244(b)(3)(C), "[t]he court of appeals may authorize the filing of

---

**3.** Fowlkes' alibi was that he was at church at the time of the assault and murder.

**4.** Robert Barbour is the son of Sheila Stokes.

a second or successive application only if it determines that the application makes a prima facie showing that the application satisfies the requirements of this subsection." *Id.* § 2244(b)(3)(C). Section 2244 provides the following requirements with respect to a successive petition:

(b)(1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.

(2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless—

(A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244.

Fowlkes seeks to raise three constitutional claims in his successive petition: (1) that he was convicted only due to ineffective assistance of counsel; (2) that the prosecution violated *Brady v. Maryland* when it failed to disclose an alleged deal between Stokes and the Commonwealth's attorney for leniency on a criminal charge in exchange for her testimony against Fowlkes; and (3) that Fowlkes was denied his Sixth Amendment right to an impartial jury when the foreman of his jury was the brother-in-law of the man Barbour claimed was the true murderer.

### A.

■ All of these claims fail under section 2244(b)(1), as they were raised in Fowlkes' original section 2254 motion. As recounted above, Fowlkes raised his ineffective assistance claim and his *Brady* claim before the district court in his original motion. On appeal, Fowlkes added the Stokes and Barbour affidavits. He used those affidavits to argue in support of his actual innocence and *Brady* claims, in addition to his newly added impartial jury claim. Thus, on appeal, Fowlkes presented the same evidence and claims that he now seeks to present in his successive 2254 motion. Considering the additional evidence and claims, the court in *Fowlkes I* stated, "we find those claims meritless." *Fowlkes I*, 2001 WL 1545484, *1. Because the evidence and claims now pressed by Fowlkes have already been raised, considered, and rejected on the merits by this court, Fowlkes' attempt to resurrect those claims fails under section 2244(b)(1).[5]

■ Fowlkes argues that the court in *Fowlkes I* did not actually reach the merits

---

**5.** Indeed, if anything, Fowlkes' assertion of actual innocence has *decreased* in merit since the appeal from the dismissal of his original petition. The affidavits adduced by Virginia, which were not before the *Fowlkes I* court, cast into serious doubt the evidence Fowlkes proffered in his original section 2254 motion to support his claim of actual innocence. Thus, even were we inclined to revisit the merits of Fowlkes' actual innocence claim, we would certainly have no basis on which to reach a result contrary to that of the *Fowlkes I* panel.

of those claims; rather it affirmed the district court on the ground that the additional evidence and claims in his supplemental briefs were not presented at the district court level. It is true that the decision of the court in *Fowlkes I* appears incongruous since it passed on the merits of the claims while at the same time dismissing the appeal on a predicate procedural ground, *i.e.*, failure to meet the certificate of appealability requirements. However strange, we are bound by the words of the *Fowlkes I* opinion, for that is the law. While it is undeniably true that, given the court's decision to deny a certificate of appealability, the court should not have reached the merits of the claims, it is nevertheless apodictic that the court did in fact address and decide the merits of Fowlkes' claims. We are accordingly bound by its determination.

We express some surprise at our concurring colleague's assertion that we did not reject Fowlkes' claims as meritless *on their merits*, but, rather, held only that Fowlkes did not make a substantial showing of the denial of a constitutional right—an assertion, he argues, that is confirmed by the fact that a holding on the merits of those claims would have been contrary to the mandates of AEDPA. As he puts it variously, the problem is either with our "attribution [of] unwarranted clarity" to the panel's opinion in *Fowlkes* or with our imputation of a holding to a portion of the panel's opinion that in reality was only *dicta*.

Judge Gregory's is a good story ruined by eyewitnesses, so the saying goes, of whom he is one. Indeed, it "might have been," as he postulates, that the panel was referring to the possibility that Fowlkes' new evidence raised issues only as to the substantiality of the constitutional questions presented, or even that that portion of the opinion in which Fowlkes' claims were rejected as meritless was really only *dicta*. But it was not so.

As Judge Gregory knows, since AEDPA was enacted seven years ago, our circuit has ignored that statute's mandates that we not proceed to decide the substantive merits of a habeas petition until and unless a certificate of appealability issues and that we not issue a certificate of appealability except upon a substantial showing of the denial of a constitutional right. We have continued to decide the substantive merits of claims presented on habeas without regard to the requirement of a certificate of appealability. And we have declined to require a certificate of appealability as a precondition to decision of the merits of the claims presented in a petition for habeas corpus.

Not only have we now openly acknowledged this practice. *See Swisher v. True*, 325 F.3d 225 (4th Cir.2003). But, that we have so proceeded (and incorrectly) has recently been pointed out to us and for us by the Supreme Court of the United States. *See Miller–El v. Cockrell*, —— U.S. ——, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003); *id.* (Scalia, J., concurring).

The problem, then, would not appear to be with either our imputation of clarity, where such is unwarranted, or our consignment to holding of that which is only *dicta*. Rather, the problem would appear to be with Judge Gregory's understandable reluctance to acknowledge that our circuit has been in error for some number of years now, including the year in which Fowlkes' appeal was decided, in deciding the merits of claims as to which no certificate of appealability had previously issued.

## B.

■ Even assuming, counterfactually, that Fowlkes had not raised these claims in his prior section 2254 motion, the claims

must still be dismissed because they do not meet the requirements of section 2244(b)(2)(B).[6] Fowlkes' ineffective assistance claim would fail under section 2244(b)(2)(B)(i) because the factual predicate for the claim could have been discovered previously through the exercise of due diligence. The new evidence adduced by Fowlkes—the Stokes and Barbour affidavits—goes only to his actual innocence, *Brady*, and impartial jury claims; none of the new evidence that Fowlkes seeks to present supports his ineffective assistance claim. The evidence supporting that claim has been available to Fowlkes at least since his trial, and indeed he raised the claim in his state habeas petition and in his first section 2254 petition.

Fowlkes' *Brady* and impartial jury claims fail section 2244(b)(2)(B)(ii)'s requirements. The standard under section 2244(b)(2)(B)(ii) is not simply whether the applicant can show a constitutional violation, as Fowlkes seems to think, but rather whether "*but for* constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2244(b)(2)(B)(ii) (emphasis added). Fowlkes' *Brady* claim fails under section 2244(b)(2)(B)(ii) because Fowlkes cannot show that *but for* the *Brady* violation, no reasonable juror would have voted to convict. While the evidence of a deal would impeach Stokes' testimony somewhat, a reasonable juror could still have credited it and, on that basis, voted to convict Fowlkes. Fowlkes' impartial jury claim would likewise fail under section 2244(b)(2)(B)(ii) because even if Fowlkes could show that the jury foreman was bi-

ased, a reasonable jury could still have voted to convict on the evidence before it. Thus, Fowlkes cannot show that *but for* the bias, he would not have been convicted.[7]

For the reasons stated herein, we deny Fowlkes' motion for authorization under section 2244.

## AUTHORIZATION DENIED

GREGORY, Circuit Judge, concurring in the judgment:

I concur with the majority's denial of Fowlkes' Motion for Authority, but would do so upon alternative grounds. The majority is correct in finding that Petitioner's claims alleging ineffective assistance of counsel and non-disclosure in contravention of *Brady v. Maryland* were raised in his original section 2254 motion before the district court, and are therefore barred under section 2244(b)(1). However, the majority unnecessarily relies upon our ambiguous and far from "apodictic" language in *Fowlkes I* regarding the "merits" of these claims. Furthermore, because the impartial jury claim was never presented before the district court, and because it is hardly clear that we considered this claim on the merits in *Fowlkes I*, I would analyze this claim under section 2244(b)(2)(B).

### I.

As the majority notes, Fowlkes' appeal incorporated the Stokes and Barbour affidavits, both to supplement his ineffective assistance of counsel and *Brady* claims and to add a new impartial jury claim.[1] Ac-

---

**6.** Fowlkes does not argue that any of his claims satisfy section 2244(b)(2)(A).

**7.** Our disposition on the merits of Fowlkes' section 2244 motion renders it unnecessary for us to address Fowlkes' arguments regarding the appropriateness of the successive section 2254 motion that he filed in district

court, even were that issue properly before this court, which it is not.

**1.** The treatment by Petitioner of this claim alternately as a generalized claim of actual innocence, and as the basis for a claim of ineffective assistance of counsel, is a bit con-

cording to the majority, when we denied a certificate of appealability in *Fowlkes I*, we also reached the merits of each of the claims before the Court. The majority reaches this conclusion by citing our dicta in *Fowlkes I*, where we noted, "[W]e have considered the issues raised in [Fowlkes'] supplemental briefing; [and] we find those claims meritless." As the majority notes, this seemingly gratuitous finding would appear "strange" and "incongruous," not to mention incorrect, under the appropriate standard for reviewing an application for a certificate of appealability. *See Miller-El v. Cockrell*, —— U.S. ——, 123 S.Ct. 1029, 1041–42, 154 L.Ed.2d 931 (2003). It is precisely in light of these observations by the majority that we should hesitate to attribute unwarranted clarity to this troublesome language. An equally plausible alternative reading of the text of our decision in *Fowlkes I* would follow from a more cautious analysis of the relationship between the terms "issues" and "claims," particularly as our interpretation of this language should be informed by the procedural context of the discourse. Thus, given that we were not required to reach the ultimate "merits" of the legal claims before us in adjudicating the application, and because the antecedent of the term "claims" is "issues," might we not have simply been referring to the Petitioner's claim that his new evidence raised additional issues in furtherance of his pending application?

Petitioner raised the issues presented in order to strengthen his case for the issuance of a certificate of appealability, which would allow subsequent consideration on the merits. Hence, our use of the term "meritless" need not implicate substantive review of the merits of the legal claims presented. Instead, we appear to have been passing upon the meritoriousness of the issues presented in support of the application, and noting that even in light of this new evidence, we were not convinced that the application warranted revisiting. The majority is correct that under the law of the case, we are bound by our prior decision in *Fowlkes I*. However, where the meaning of that decision is unclear, and where we can adopt an equally compelling alternative understanding of the language of that decision, I see no need to assume the worst and reach our shared conclusion by buttressing a flawed basis of decision.

### A.

AEDPA does not suffer kindly the relitigation of tired claims. Although we have had little opportunity to interpret the meaning of the term "claim" under section 2244(b),[2] the purpose of AEDPA as well as Supreme Court pronouncements upon the nature of this section allow us to apply modified principles of res judicata to its analysis. *See, e.g., Felker v. Turpin*, 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) ("The new restrictions on successive petitions constitute a modified res

---

fusing. In the final briefing papers supporting his Motion for Authority, Petitioner treats the claim exclusively as one of actual innocence. However, in the briefing submitted to the district court under § 2254, Petitioner argued that ineffective assistance of counsel had resulted in the conviction of one who was actually innocent. This inconsistency probably betrays Petitioner's awareness of the claim preclusion effect of § 2244(b)(1), which he attempts to evade by fashioning the claim as one of "actual innocence" under *Schlup* and its progeny. For simplicity, from this

point forward I shall refer to this hybrid claim as the "ineffective assistance of counsel claim."

**2.** *See, e.g., Harvey v. Horan*, 278 F.3d 370, 380 (4th Cir.2002) ("[A] second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits." (internal quotations and citation omitted)).

judicata rule, a restraint on what is called in habeas corpus practice 'abuse of the writ.' "). Additionally, our sister circuits have developed varying approaches to the analysis of this statutory question. *See, e.g., Brannigan v. United States,* 249 F.3d 584 (7th Cir.2001) (utilizing principles of claim preclusion to analyze successiveness of claim); *Babbitt v. Woodford,* 177 F.3d 744, 746 (9th Cir.1999) ("[A] ground is successive if the basic thrust or gravamen of the legal claim is the same, regardless of whether the basic claim is supported by new and different legal arguments ... Identical grounds may often be proved by different factual allegations." (internal citations and quotation omitted)); *Roberts v. Bowersox,* 170 F.3d 815, 816 (8th Cir.1999) (reassertion of constitutional violations raised in first petition barred); *In re: Medina,* 109 F.3d 1556, 1565 (11th Cir. 1997) (appearing to assume that the presentation of a new legal claim constitutes presentation of a new claim). Of these varying analytical approaches, that developed by the Seventh Circuit in *Brannigan* offers an excellent model for the matter *sub judice.* Rather than adopting an excessively restrictive definition of "claim," where any claim arising out of the same constitutional right is precluded, the *Brannigan* court offers a nuanced approach concomitant with traditional notions of res judicata.

Writing for the majority, Judge Easterbrook focused the court's inquiry upon, "defin[ing] the 'claim' as a challenge to a particular *step* in the case, such as the introduction of a given piece of evidence, the text of a given jury instruction, or the performance of counsel." 249 F.3d at 588. The *Brannigan* majority relied upon this distinction to reject the petitioner's challenge under *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), ruling that his weapons enhancement and drug quantity determination challenges presented only one claim. Because the petitioner had already presented the weapon possession claim under *Apprendi,* he was precluded under § 2244(b)(1) from presenting the drug quantity challenge. The court reasoned that both related to the same step of the case, to-wit, the sentencing enhancement.

In a separate concurrence, Judge Cudahy took issue with the majority's approach to claim preclusion, and offered a more fact-intensive approach. Specifically, Judge Cudahy reasoned, "A claim, specifically in the context of the federal habeas statute, is a set of facts giving rise to a right to a legal remedy. A claim is therefore distinguished by its facts (specifically by its nucleus of operative facts), not just by the legal principle that it invokes or the body of law from which it derives." 249 F.3d at 590 (internal quotations omitted). Applying either of these approaches to the *Brady* and ineffective assistance of counsel claims presented to the district court in *Fowlkes I,* we can dismiss the claims before us today as precluded. Under the step theory, Petitioner's claims both go to the introduction of damaging testimony by the Commonwealth at trial. The new affidavits merely fortify Fowlkes' challenge to this step of the litigation. However, because our inquiry should also account for the possibility of meaningful factual differences between claims, even where the claims concern the same step, I would adopt Judge Cudahy's approach.

Under Judge Cudahy's approach, Fowlkes' new evidence fails to extricate him from the bonds of claim preclusion. The essence of his claims of ineffective assistance of counsel and of non-disclosure of the leniency deal under *Brady* is that the testimony of Sheila Barbour was perjured. Assuming that this were true, there would be no independent corroboration of his conversation regarding driving

to the scene of the crime and no corroboration of the cleaning of blood from his car. Additionally, Fowlkes offers the testimony of Robert Stokes that his mother had perjured herself and that another individual had committed the crime. Here, the "common nucleus of operative fact" is clearly the assertion that Ms. Barbour perjured her testimony in exchange for a deal. Without this perjured testimony, the government may well have failed to convict Fowlkes. However, Fowlkes had presented this theory of perjury in his prior petition, even though he supported it with different affidavits. Although he now offers new evidence in support of the theory, the evidence seeks to establish the same operative fact, perjury for leniency. The mere offering of new evidence in support of the same theory cannot relieve Petitioner of the effects of res judicata. Were we to hold otherwise, habeas petitioners would earn a new hearing every time they adduced a new affidavit or piece of evidence in support of a previously litigated theory.

Under this analysis, the new affidavits do not render the claims previously adjudicated "new" for purposes of claim preclusion. Both claims can be dismissed therefore upon the basis of their presentation in the first application.

### B.

As the majority notes, Petitioner first raised his impartial jury claim in his supplemental briefing before this court in *Fowlkes I*. Even though we did not reach the merits of this claim, petitioner clearly "presented" it in a prior petition, so we may again dismiss it under section 2244(b)(1). However, should we wish to treat the claim as "new," and thereby avoid the question of whether presentation

of the claim only on the application for a certificate of appealability is tantamount to presentation in the petition *ab initio*, we can reach dismissal through application of section 2244(b)(2). Here, I would concur with the majority's analysis and the conclusion reached.[3]

---

**3.** With respect to this analysis, I would note that the impartial jury claim is particularly suspect in light of the fact that the Petitioner has not alleged that the foreman was even aware that his relative may have been involved with the crime.