Tyrone V. WORLDS, Petitioner–Appellant,

v.

Edwin BUSS, Respondent–Appellee.

No. 03–2519.

United States Court of Appeals, Seventh Circuit.

Submitted Dec. 16, 2003.[*]

Decided Dec. 16, 2003.

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Tyrone V. Worlds, pro se, Robbins, IL, for Petitioner–Appellant.

David L. Steiner, Office of the Attorney General, Indianapolis, IN, for Respondent–Appellee.

Before POSNER, ROVNER, and EVANS, Circuit Judges.

## ORDER

In August 2001, Indiana inmate Tyrone Worlds pleaded guilty to a prison disciplinary violation before a Conduct Adjustment Board (CAB) at Westville Correctional Facility. Months later a prison counselor interpreted the conviction as a Grade B violation that would cost Worlds a preferred housing assignment and retroactive loss of good time; that reading prompted Worlds to seek administrative review on the ground that his guilty plea had actually been to a lower, Grade C violation. When prison officials rejected his appeals, Worlds filed a petition under 28 U.S.C. § 2254 claiming that the conviction records

do not accurately reflect the offense to which he pleaded guilty. Because we conclude that the district court misapprehended Worlds' claim in denying relief, we vacate and remand.

In early August 2001, guards searching Worlds' cell confiscated a pair of officer's gloves that had been sewn inside a pair of prisoner's gloves. Prison officials drafted a conduct report charging Worlds with "theft," an offense described in the report as a Code 224 violation. Five days after receiving notice of the charge, Worlds appeared before the CAB, waived his rights to present witnesses and consult with a lay advocate, and entered a negotiated guilty plea to a different violation. On the Report of Disciplinary Hearing issued by the CAB and signed by Worlds, the typed word "THEFT" is lined out and replaced by the handwritten words "Unauthorized Relocation." Similarly, the typed offense code, "224" is lined out and replaced by the handwritten number "215." Under Indiana's prison disciplinary code, theft is a Class B, Code 224 violation; "unauthorized possession, destroying, altering, or damaging state property, personal property or property belonging to another" is a Class B, Code *215* violation; and "unauthorized possession, alteration, removal, or *relocation* of property" is a Class C, Code 353 violation. Worlds was sanctioned with a one-month loss of telephone privileges and a demotion in credit-earning class.

Nearly six months later, Worlds pleaded guilty to possession of tobacco, a 200–level violation. A prison counselor informed him that, because this was his second 200–level, or Class B, violation within a sixth-month period, he would be moved to a different dormitory. According to Worlds, he then learned for the first time that the handwritten offense code on the August 2001 hearing report corresponded to a Class B "unauthorized *possession*" viola-

tion, not the less-serious Class C "unauthorized *relocation*" violation to which he pleaded guilty.

Worlds then filed an administrative appeal of the August conviction to the Acting Superintendent, claiming that the CAB had told him that the reduced charge was a Class C violation, and that if he pleaded guilty to the reduced charge he could keep his prison job. Worlds explained that a guard had allowed him to use the gloves while working out in the cold, but had not given him permission to take the gloves back to the dormitory where they were found. He insisted that he had pleaded guilty only to "unauthorized relocation," the less-serious, Class C violation. The Acting Superintendent denied the appeal, explaining that the Report of Disciplinary Hearing "documents that the charge was changed to a code # 215 Unauthorized Possession, Destroying, Altering or Damaging State Property." The Acting Superintendent also noted that appeals from CAB decisions must be made within 15 days of receipt of the decision, making Worlds' appeal untimely. Worlds appealed to the Final Reviewing Authority, which in a May 2002 decision upheld the conviction after discerning "no evidence of procedural or due process error" and concluding that the conduct report was "quite clear" and supported "the charge." The Final Reviewing Authority chided Worlds for his failing memory and suggested that "[m]aybe it was because you waited eight or nine months to file your appeal."

In July 2002 Worlds turned to federal court seeking to have his disciplinary conviction properly classified. In his § 2254 petition and supporting materials, Worlds again claimed that he pleaded guilty only to a Class C, "unauthorized relocation" violation, not the more-serious Class B violation that prison authorities now insisted was the case. Worlds alleged that until January 2002 prison authorities had con-sistently interpreted the August 2001 conviction as a Class C violation, and it was not until his prison counselor had misinterpreted the Report of Disciplinary Hearing that officials began to characterize the offense as a Class B violation. Worlds noted that inmates convicted of Class B violations are automatically sanctioned by the loss of their prison jobs for six months, but he was allowed to keep his landscaping job until his January 2002 violation. More significantly, Worlds also pointed out that in August 2001 he was nearing the end of a six-month suspended sentence for a Class C violation incurred in February 2001; that sentence included a demotion in credit-earning class that would be take effect if Worlds committed a Class A or B violation during the six-month period, but no action was taken to revoke any of the good time earned between February and August 2001 until after his prison counselor became involved in January 2002. According to Worlds, the misinterpretation of the nature of the August 2001 violation had not just affected his housing assignment, but had erroneously cost him good time for the period of his suspended sentence.

In response the state first noted that "the failure to present a claim during the state administrative process works a procedural default," but never did the State assert that Worlds *had not* presented his claim during his administrative appeals or that he otherwise had procedurally defaulted that claim in some other manner. Instead the State argued that it was "impossible to believe the petitioner's story" because the "report of hearing that the petitioner signed admits his guilt of unauthorized relocation, a Code number 215." The state conceded the "mismatch between the code number and the description of the offense," but explained that the "most reasonable inference from the records is that the petitioner intended to plead guilty to the Class B offense num-

bered 215 and the CAB mistakenly wrote" "unauthorized relocation" when it meant "unauthorized possession." The State added that World's explanation for how he acquired the gloves, as well as his delay in appealing the conviction, supported its interpretation of events.

The district court summarily denied relief in a brief order. Without commenting on the parties' dispute over the nature and classification of the violation, the court simply observed that "[a]pparently this petitioner finally pled guilty to unauthorized relocation." The court then explained that the "evidence" was sufficient to sustain Worlds' conviction under the "some evidence" standard. Worlds moved for reconsideration, asserting that the court had misunderstood his claim. The district court denied the motion.

■ Before we can reach the merits, the state first argues that Worlds procedurally defaulted his claim because he did not file his administrative appeals in a timely manner. Apart from the fact that the state never asserted this–or any other–theory of procedural default in the district court, *see Moore v. Casperson*, 345 F.3d 474, 493 n. 7 (7th Cir.2003), the state cannot rely on procedural default under § 2254 because prison authorities did not ultimately rely on the timing of Worlds' administrative challenge in denying it. Although the Acting Superintendent's denial could be read as relying on the perceived lateness of Worlds' first-level appeal, it would be a stretch to interpret the Final Reviewing Authority's comment about Worlds' failed memory as a refusal to address the appeal because of the delay in bringing it. Indeed, the state does not even argue that the Final Reviewing Authority denied the appeal *because* it was late, and since the Final Reviewing Authority overlooked the timeliness of Worlds' appeal and proceeded to the merits, so must we. *Jefferson v. Welborn*, 222 F.3d 286, 288 (7th Cir.2000).

■ The district court analyzed this case as though it were a disciplinary conviction obtained after a contested hearing, apparently concluding that due process was satisfied because Worlds' conviction is supported by "some evidence." *See Wolff v. McDonnell*, 418 U.S. 539, 563–66, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). But that view misses the point of Worlds' petition, as does the state's contention here that the "report that Worlds signed admits his guilt of unauthorized relocation, a code 215 violation." Worlds recognizes that he waived the right to put the state to its burden of proof when he pleaded guilty, *see United States v. Gilliam*, 255 F.3d 428, 432 (7th Cir.2001), and he does not argue that his guilty plea was inadequate to support a conviction. But it is clear enough from the record that "unauthorized relocation" is *not* a Code 215 violation, and the question Worlds presented to the district court was straightforward and factual: did he plead guilty to, and incur a conviction for, the violation corresponding to the offense *name* or offense code written on the Report of Disciplinary Hearing? Neither the state in its brief or the court in its order confronts the factual dispute, which only an evidentiary hearing can resolve. Most likely this case is easily resolved; either–as Worlds insists–the CAB did strike a deal with him to reduce the theft charge to a Class C violation, or Worlds' current version of events is untruthful. But what is missing is any answer from the CAB members who were on the other side of the negotiations, and we cannot accept the state's premise that we should just adopt its position as the more reasonable.

We do not understand the state to be arguing that it makes no difference which charge Worlds intended to plead to because he agreed to his sentence at the time he entered his plea. Worlds' signature on the Report of Disciplinary Hearing evi-

dences his awareness of the disposition, not his agreement. That aside, we briefly note that the prison's insistence that Worlds was convicted of a Class B offense in August 2001 has already cost him the suspended sentence for his February 2001 offense, leading to a retroactive loss of good time that would not have been triggered by a Class C conviction. And although the record is not entirely clear, Worlds alleges that the characterization of his conviction as a Class B violation resulted in a total loss of eight months good time, part of which appears to be due to the fact that Worlds has been subjected to the recidivist penalties that apply only to inmates with more than one Class A or B conviction.

Accordingly, we VACATE the decision of the district court and REMAND for further proceedings consistent with this order.